Nott, J.,
delivered the opinion of the court:
The Treasury accounts are popularly said to be always open. But a restated account may and often does consist of two classes of charges: First, errors and omissions which appear on the face of the account, as where an officer is credited with a larger salary than the statute has fixed, or where there is some error of calculation or omission to carry out a charge which is stated in the account. Second, of errors,and omissions which are in fact new charges, founded on evidence, documentary or otherwise, that has come to the ppssession or notice of the accounting officers since the original account was stated; evidence which the person against whom the account is stated is at lib- . erty to deny or refute, and where the correctness of the charge depends upon the establishment of a fact.
A number of items in this case belong to the latter class. The accounting officers have now charged a deceased officer for having been absent without leave or in excess of leave.. That is to say, after an officer’s accounts were passed and supposed to be settled and after he was paid the balance appearing to be due to him, the defendants seek to recover back by counterclaim overpayments for services, which charges of overpayment are founded upon the fact, now asserted for the first time, that he was paid for different periods for -which he should not have been paid because his leaves of absence had expired; and they produce no evidence to sustain the fact of overpayment, i. e., of absences without leave, other than a .restatement of his account by the accounting officers.
No statute of limitations runs against the Government, but, where the Government is seeking affirmative relief, the satisfactory or unsatisfactory character of its evidence must be a matter of consideration. This has been very clearly and incisively stated by Attorney-General Black in a case which in several particulars is remarkably like the one before the court:
“ The claim is based on transactions which are twenty-three years old. It is a rule of common sense and reason, as well as law, that when a party has lain by with a claim until the evi *325 dence concerning it has ceased to exist and then produces it the other party is not bound to explain it. It is presumed that he could explain it if his witnesses were alive and his papers preserved, and that presumption shall stand in the place of all the proof which might have been demanded when the matter was fresh. I admit that the statute' of limitations can not be pleaded against the Government as a technical bar. I do not speak of that conclusive legal presumption which would be created in six years against an individual. But the Government is bound, like anybody else, by the rules of evidence and by the natural presumptions arising from, the facts of the case. In some countries there are no statutes of limitation; in all countries there are large classes of cases to which snch statutes do not apply. But it is one of the rules of every civilized code that a certain length of time, generally about twenty years, shall be regarded as evidence that a claim is either unjust or satisfied, and such lapse of time proves that fact as fully as if it had been attested by credible witnesses. The experience of all mankind has shown that the evidence thus furnished by time is true and reliable. The judge who disregards it would decide against the original honesty of the case ninety-nine times in a hundred.
“ There is no such impeccability ascribed to a government as will give it a right to deny the evidence. ’ When time testifies against the sovereign it is heard with as much respect as any other witness would be.
“ This is the rule which must be applied to every stale claim, even when it seems to have been clear and free from dispute at first.” (9 Ops., p. 204.)
In the present case $269.34 is made up of ten items charged against the deceased officer for absences without leave, the most recent of which occurred inore than twenty years ago. If the charges had been made at the proper time it is quite possible that he might have produced evidence to refute them; that is, leaves of absences which were unknown to accounting officers. It would be most unreasonable to require that his widow or executor should do so now. There must be an end of litigation, says a maxim of the law; and there must be at some time or other an end of accounting. No fixed rule can be laid down to govern all cases, but in the present one it is the opinion of the court that the evidence relied upon, the restated account, refutes itself.
The counter claim also sets up overpayments of longevity pay, $320.08, all of which were made during or prior to the year 1879. These were not overpayments made in mistake of fact 'or in ignorance of law. It is not a case where the accounting *326 officers were misinformed as to tbe length of the officer’s service nor where they overlooked a statutory restriction. It can hardly he said that the payments were made even in mistake of law,for the mistake relied upon depends upon a point of law now raised and not yet decided. The fact is that this is merely the case of executive officers reviewing the decisions of their predecessors and ascribing to the law a different meaning than their predecessors gave to it. If the construction now given by the accounting officers had been given at the time when the payments were allowed, the officer might have resigned. After the deliberate action of the accounting officers at that time, and the continued service of the officer whose accounts were settled, it would be most inequitable to allow the defendants to bring an action to recover back such payments as money which in equity and good conscience the defendant should not retain; and that is the principle upon which actions to recover back money paid in mistake of fact are allowed. A similar conclusion has been reached in analogous cases. (Hillborn’s Case, 27 C. Cls. R., 547.)
When these items are excluded from the account the . new credits given therein exceed the new debits in amount — i. e., the balance of the restated account is in favor of the deceased officer. The counter claim, therefore, fails, and the claimants are entitled to recover the full amount of their demand. '
The judgment of the court is that the claimants recover the amount of $450.
Davis, J., did not sit in this case, but agreed in the principles which govern the decision.